IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KISTCO COMPANY, a Nebraska Corporation doing business as KISTLER EQUIPMENT COMPANY;<br><br>Plaintiff,<br><br>vs.<br><br>PATRIOT CRANE AND RIGGING, LLC, a Nebraska Corporation; and JAMES GLODOWSKI, an individual;<br><br>Defendants. | 8:19-CV-482<br><br>PRELIMINARY INJUNCTION |

This matter came on for hearing on Plaintiff's Motion for Preliminary Injunction on the 13th day of November, 2019. Filing 4. Both parties appeared by counsel of record and adduced evidence. For the reasons set forth herein, the Motion for Preliminary Injunction is granted in part and denied in part.

I.  BACKGROUND

The following is a summary of facts alleged in Plaintiff's Complaint and accompanying supplement, Filing 1; Filing 10, as well as the evidence submitted at the preliminary injunction hearing: the affidavit and declaration of Laura McElligott, Filing 16; Filing 32; the declaration of Jack Tarr, Filing 30, and the declaration of James Glodowksi, Filing 31.

Plaintiff, Kistco Company, doing business as Kistler Equipment Company ("Kistler"), is an Omaha-based company that provides design, installation, repair, maintenance, and inspection services for cranes and hoists. Filing 1 at 2, ¶7. Kistler hired Defendant, James Glodowski, as a technician in early 2016. Filing 1 at 2, ¶8. Glodowski was responsible for servicing Kistler's customers and developing and maintaining a relationship with those customers. Filing 1 at 2, ¶9.

1

Glodowski was the face of Kistler for many of its customers, and customers contacted him directly to schedule service calls. Filing 1 at 2, ¶¶7, 10. Glodowski rose through the ranks at Kistler and became Kistler's key service-department employee and longest-tenured technician. Filing 1 at 4, ¶¶17, 18. Such longevity and reliability garnered Glodowski greater trust, responsibility, and access to confidential customer and internal financial information. Filing 1 at 4, ¶¶17, 19.

As a condition of his employment with Kistler, Glodowski signed a contract agreeing to three relevant restrictions. The first, entitled "Post-Employment Competition" provided as follows:

> For a period of one (1) year immediately following termination (for any or no reason) of employment with Employer, Employee will not seek or accept employment with, and will not call on or solicit the business of, or sell to, or service (directly or indirectly, on Employee's own behalf or in association with any other individual or entity), any of Employer's customers with whom Employee did business and had personal contact while employed by Employer, except to the extent such activities are unrelated to, and not competitive with, the business, products and/or services offered or provided by Employer or cannot adversely affect Employer's relationship or volume of business with such customers. Employee specifically acknowledges that this restriction is necessary and reasonable for the protection of Employer's customer goodwill, and that it will not prevent Employee from being gainfully employed following termination of employment with Employer because Employee will be free to engage in any occupation, and even to compete with Employer, as long as Employee honors the restrictions contained in this paragraph concerning contact with certain of Employer's customers.

Filing 10 at 1; Filing 1 at 3, ¶14.

Second, the employment contract provided Glodowski would not solicit or hire—on his own behalf or on behalf of an entity—any of Kistler's employees with whom he worked for other employment in competition with Kistler. Filing 1 at 3-4, ¶¶15, 16.

Lastly, the contract provided Glodowski would never use or disclose any of Kistler's private customer, financial, or business information for any purpose other than furthering Kistler's business interests. Filing 1 at 5, ¶21.

2

The stated purpose of the first two restrictions was to protect Kistler's customer goodwill, and those two restrictions were to last for a one-year period following the termination of Glodowski's employment with Kistler. Filing at 1 at 3-4, ¶¶14, 15.

On or about April 10, 2019, Glodowski resigned from his employment with Kistler and shortly thereafter started working for Defendant, Patriot Crane and Rigging, LLC ("Patriot"), one of Kistler's competitors. Filing 1 at 5-6, ¶¶21, 26. Another Kistler technician, Jeremy Bradford, left his employment at Kistler within a day of Glodowski's resignation and also began working for Patriot. Filing 1 at 6, ¶27. Glodowski later told one of Kistler's employees that he informed Patriot that he would not go work there unless he could bring Bradford with him. Filing 1 at 6, ¶29.

A few months after Glodowski resigned, a Kistler technician saw Glodowski at the place of business of one of its customers, Sioux City Foundry, and Sioux City Foundry stopped making frequent breakdown calls to Kistler despite previously making such calls several times a month. Filing 1 at 6-7, ¶¶31-32; Filing 16 at 1. Another Kistler technician saw Glodowski at the place of business of another customer, Valmont, and a third customer, Airlite Plastics, stopped calling Kistler for service and will not return phone messages left by Kistler's employees. Filing 1 at 7, ¶¶33-34; Filing 16 at 2. On October 30, 2019, Kistler Operations Manager Connie Skalka emailed Superior Industries ("Superior"), a prior customer of Kistler, to offer to schedule their annual hoist inspections. Filing 1 at 8, ¶38; Filing 16 at 2. Superior responded Patriot and Glodowski had already performed the inspection. Filing 1 at 8, ¶39. Kistler argues that Glodowski, with support, encouragement, and/or incentives from Patriot, continues to breach his contract by soliciting Kistler's customers and employees and using its confidential information. Filing 1 at 8, ¶40.

At the preliminary injunction hearing, Kistler offered an affidavit and a declaration from Laura McElligott, co-owner of Kistler, in addition to its Verified Complaint and a copy of the

employment contract between Kistler and Glodowski. McElligott listed eighty-four Kistler customers with whom Glodowski did business and had contact during his time with Kistler. Filing 32 at 3-4.

Defendants submitted the declarations of Jack Tarr and James Glodowski in opposition to the motion for preliminary injunction. Filing 30; Filing 31. Tarr, Patriot's Operations and Sales Manager, averred that the crane-service business has "a limited universe of customers in the Midwest." Filing 30 at 1. He further stated that while Glodowski is not responsible for sales at Patriot, his position as Service Manager "does require him to have contact with the customer in order to define the scope of work to be performed as well as to timely schedule the work." Filing 30 at 2. Tarr stated that Superior was the only customer that previously did business with Kistler who started doing business with Patriot after Glodowski was hired. Filing 30 at 5. Tarr provided a list of eight customers, including Superior, who hired Patriot because they were unsatisfied with Kistler. Filing 30 at 5.

Glodowski's declaration stated that he has not solicited any of Kistler's customers on behalf of Patriot. Filing 31 at 2. He averred the only Kistler customer to start doing business with Patriot after his hire was Superior and that he did not initiate the contact with Superior. Filing 31 at 3. Glodowski stated, "Superior Industries' Maintenance Manager, Heath Shalon, contacted me about services that could be performed by Patriot. . . . Mr. Shalon was unhappy with the services provided by Kistler and, for that reason, he sought work from Patriot." Filing 31 at 3.

## II. DISCUSSION

Kistler's motion states it seeks a preliminary injunction preventing Glodowski and Patriot from "directly or indirectly, soliciting, contacting, servicing, contracting with, or accepting business from customers of Kistler with whom Glodowski did business and had personal contact

4

while employed by Kistler" for one year. Filing 4 at 2-3. However at the hearing, Kistler modified its request to only enjoin Patriot from working with prior Kistler customers if Glodowski has direct contact with the customers or plays a role in recruiting the customers to Patriot. As the Court understands its modified request, Kistler no longer seeks to enjoin Patriot from doing business with prior Kistler customers if Glodowski has no involvement with them. Kistler further seeks a preliminary injunction preventing Patriot and Glodowski "and all persons acting in concert or active participation with them for a period of two years from the date of the Court's order from directly or indirectly using, disclosing, or transmitting" confidential information Glodowski obtained during his employment at Kistler and preventing Glodowski and Patriot from destroying any data relevant to Kistler's claim. Filing 4 at 2-3.

In deciding a motion for a preliminary injunction, the court must consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "A preliminary injunction is an extraordinary remedy . . . ." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The burden of establishing the propriety of issuing a preliminary injunction is on the movant. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). The Court will address each of the *Dataphase* factors in turn.

### A. Threat of Irreparable Harm

First, Kistler must show that it will suffer irreparable harm if the preliminary injunction is not issued.

"[I]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). This Court has previously recognized that "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 978 (D. Neb. 2008) (alteration in original) (quoting *Med. Shoppe Int'l., Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003)). Furthermore, the Eighth Circuit has agreed that monetary damages alone can compensate for harm already incurred, but injunctive relief is appropriate to "protect[] . . . against the loss of any additional customers due to the illegalities of the defendants." *Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991).

1. *Future Solicitation of Kistler Customers*

Kistler has shown a likelihood of irreparable harm due to further loss of customers, business, and goodwill if Defendants are not enjoined from soliciting additional customers with whom Glodowski previously worked.[1]

"Irreparable harm 'can be inferred from a trial court's actual finding of a breach [of a restrictive covenant] by the defendant.'" *Overholt Crop Ins.*, 941 F.2d at 1371 (quoting *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 92 (Minn. 1979)). In his declaration, Glodowski admits to conduct with respect to Superior which amounts to a breach of the noncompetition agreement. Glodowski states that while he did not reach out to Heath Shalon at Superior, he

---

[1] In the materials and the previous stipulation regarding a temporary restraining order (Filing 23), the parties stipulated for the purposes of the TRO that Glodowski would not "contact for any reason, nor solicit or provide services to" certain named customers. Filing 23 at 2. The Court does not have sufficient information to determine which customers should and should not be included in a preliminary injunction in this matter. Thus, the Court will define in detail the enjoined conduct in terms of categories of customers who share certain characteristics.

accepted a call from Shalon and that Patriot received business from Superior as a result of Glodowski speaking with Shalon. Filing 31 at 3. This is in direct contravention of the noncompetition agreement provision which prohibits Glodowski from "sell[ing] to, or servic[ing]" any Kistler customers with whom he had previous contact. Filing 10 at 1.

Defendants argue that Glodowski's contact with Superior was not a breach of the employment contract because it did not "adversely affect [Kistler]'s relationship or volume of business with such customers," which is an exception to the covenant not to compete. Filing 10 at 1. The Court finds this argument unavailing. Superior stopped its relationship with Kistler and began working with Patriot as a direct consequence of Glodowski's phone call with Shalon. Thus, Glodowski's contact with Superior did adversely affect Kistler's relationship and volume of business with Superior.

Based on Glodowski's prior breach of the noncompetition agreement, the Court infers a likelihood of irreparable harm related to Kistler customers Glodowski had previous contact with and who he might attempt to solicit, sell to, or service in the future, just as he admits doing with Superior.

2. *Kistler Customers Already Solicited by Glodowski to Patriot*

With respect to the customers with whom Glodowski previously had contact and who are presently doing business with Glodowski and Patriot, however, Kistler has not shown how it will suffer new harm or loss without a preliminary injunction. Kistler alleges it believes Glodowski has already solicited certain Kistler customers and such customers have agreed to hire Patriot for certain services. Filing 1 at 6-8. Plaintiff requests that this court enjoin "Patriot . . . from . . . servicing, contracting with, or accepting business from" even those former Kistler clients who have already chosen to move their business to Patriot. Filing 4 at 2.

A preliminary injunction is only appropriate where there will be irreparable harm to the party requesting the equitable relief. *See Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) ("[P]reliminary injunctive relief is improper absent a showing of a threat of irreparable harm."). In the event that there are other current customers of Patriot like Superior who have hired Patriot as a result of Glodowski's contact or solicitation, such customers have already made the decision to move their business to Patriot and have presumably already paid or will pay Patriot for its services. If such situations indeed exist, the parties, through discovery, will be able to determine how much such customers have paid to Patriot and, combined with other discoverable information, will be able to calculate the amount of monetary damages which will compensate Patriot for the harm it has incurred. Given that the loss of such customers has already occurred and monetary damages can be calculated to compensate Patriot, a preliminary injunction as to such customers is not appropriate.

Further, the Court is hesitant to disrupt the businesses of customers who are already doing business with Patriot. Such customers were not parties to the Kistler–Glodowski employment contract and should not pay the price for its breach. Restraining the ability of such customers to obtain maintenance services on a prospective basis could negatively impact their businesses. The Court is not willing to involve such customers in this dispute in a way that prevents them from proceeding with their chosen vendor.

The harm to Kistler's business from losing those customers who have left Kistler for Patriot has already occurred; those customers' business and goodwill have already been lost. Accordingly, the first *Dataphase* factor weighs in favor of issuing the preliminary injunction only as it relates to any additional Kistler customers with whom Glodowski previously worked.

### B. Balance of Injury to the Parties

Second, balancing the threat of harm to Kistler if the preliminary injunction is denied with the injury to Defendants if it is granted, Kistler has shown this factor also weighs in favor of issuance of a preliminary injunction. Importantly, Kistler does not seek to enjoin Patriot from doing business with all Kistler customers. Rather, Kistler's request, as modified at the preliminary injunction hearing, is that Patriot be enjoined from working with prior Kistler customers only if Glodowski has direct contact with the customers or plays a role in recruiting the customers to Patriot. Kistler admits that Patriot is permitted to contact "the customers whom Patriot was already servicing" or customers "with whom Glodowski did not do business and have personal contact while he worked at Kistler." Filing 6 at 13-14. Thus, the Court concludes that any injury to Patriot and Glodowski is minimal because it would not affect Patriot's current business, while the risk of harm to Kistler, as discussed above, is more serious and involves the risk of loss of significant business and goodwill. Accordingly, this factor weighs in favor of issuance of the preliminary injunction.

### C. Likelihood of Success on the Merits

Third, the likelihood of Kistler's success on the merits of its breach-of-contract claim favors issuance of a preliminary injunction. "In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995)). A movant need not prove it is more likely than not to prevail, but "need only show a reasonable probability of success, that is, a 'fair chance of prevailing'" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir.

2008) (en banc)). Here, Kistler must demonstrate a likelihood that the covenant not to compete is valid and that Glodowski breached the agreement.

   1. *Validity of the Contract*

In determining whether a noncompetition agreement is valid, Nebraska courts consider whether the restriction is (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee. *Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 275 Neb. 642, 653, 748 N.W.2d 626, 638 (2008) (citing *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001)).

Kistler has demonstrated for the purpose of the preliminary injunction that the factors support the validity of the contract. There is no reason to believe the contract is injurious to the public. To the contrary, Kistler has shown that the covenant not to compete benefited its customers by giving Glodowski access to information and contacts which enhanced the service Kistler could provide.

Second, Kistler has shown that it has a legitimate interest in protecting its customer goodwill and confidential information. "Where an employee has substantial personal contact with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair, and the employer has a legitimate need for protection against the employee's competition." *Prof'l Bus. Servs., Co. v. Rosno*, 256 Neb. 217, 224, 589 N.W.2d 826, 831 (1999) (citation omitted); *see also Am. Sec. Servs., Inc. v. Vodra*, 222 Neb. 480, 488, 385 N.W.2d 73, 79 (1982) (quoting 6A A. Corbin, Corbin on Contracts § 1394 at 98 (1962)) ("A

promise to forbear to solicit . . . customers and to deprive the employer of the advantage of that goodwill is reasonable.").

Lastly, the contract is not unduly harsh on Glodowski. The factors Nebraska courts consider in determining whether a covenant not to compete is unduly harsh include (1) the risk the employer will lose customers; (2) the extent of participation in retaining customers; (3) the good faith of the employer; (4) the nature and extent of the business position the employee held; (5) the employee's training, health, education, and needs of his or her family; (6) the existence of sources of general knowledge pertaining to the identity of customers; (7) current conditions of employment; (8) the necessity of the employee changing his or her occupation or residence; (9) whether the restraint is necessary to protect a legitimate interest; and (10) the inequality of bargaining power. *See C & L Indus., Inc. v. Kiviranta*, 13 Neb. App. 604, 615, 698 N.W.2d 240, 250 (2005) (citing *Vodra*, 222 Neb. at 490-91, 385 N.W.2d at 80).

The Court has considered these factors and concludes the contract is not unduly harsh. In particular, Kistler has shown it is at risk of losing additional customers while also demonstrating that enjoining Defendants from contacting the relevant Kistler customers will not have a significant impact on Patriot's business. Further, it does not appear Glodowski will be excessively harmed by not being able to contact former Kistler customers; Glodowski has already secured alternative employment in the same geographic area. The evidence at this stage does not show the contract to be unduly harsh.

In total, Kistler has demonstrated at this stage of the proceedings that the covenant not to compete is likely valid. The Court notes that the Nebraska Supreme Court has recently upheld a noncompetition agreement with language largely identical to that in the Kistler–Glodowski employment contract, further bolstering the likelihood the contract at hand is valid and

enforceable. *See Aon Consulting*, 275 Neb. at 645, 748 N.W.2d at 633 (upholding noncompetition agreement that provided if employee left he would not "directly or indirectly, for a period of two (2) years after the date of such termination of your employment . . . solicit, sell to, divert, serve, accept or receive . . . business . . . from any customer or active prospect of" his employer with which he had contact).

### 2. Breach of the Contract

Kistler has also demonstrated that it would likely be able to prove that Glodowski violated the covenant not to compete contained in his employment contract. Kistler has shown a likelihood that Glodowski has conducted business with at least three of his former Kistler customers, in violation of the express terms of the contract. As stated above, Glodowski admits to violating the noncompetition agreement with respect to his accepting business from Superior. Filing 31 at 3. Accordingly, Kistler has shown a likelihood of success on the merits of its breach-of-contract claim.

### D. Public Interest

Lastly, the public interest weighs in favor of issuing the preliminary injunction. The public has an interest in seeing voluntarily made contracts upheld and in seeing that parties to such contracts do not gain an unfair advantage in the marketplace by means of their breach. *See Merry Maids, L.P. v. WWJD Enters., Inc.*, No. 8:06CV36, 2006 WL 1720487, at *11 (D. Neb. June 20, 2006), *modified on reconsideration in part on other grounds*, No. 8:06CV36, 2006 WL 2040245 (D. Neb. July 20, 2006) ("The enforcement of a reasonable covenant not to compete serves to confirm the legitimate expectations of business people who enter into . . . agreements."); *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1134 (D. Minn. 1996) (noting "the public interest in a competitive marketplace" in assessing whether to issue injunctive relief).

Considering all the relevant *Dataphase* factors, the Court concludes Kistler has met its burden of demonstrating a preliminary injunction is necessary in this case.

### E. Bond

Having determined that a preliminary injunction is warranted, the Court must determine the amount of security Kistler is required to pay. Under Federal Rule of Civil Procedure 65(c), it is mandatory that the Court require the plaintiff to post a bond. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order *only if* the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." (Emphasis added.)). "However, the 'amount of the bond rests within the sound discretion of the trial court . . . .'" *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (quoting *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976)). Such "bond is a security device, not a limit on the damages . . . defendants may obtain . . . if the facts warrant such an award." *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1309 (8th Cir. 1997).

The Court determines a minimal bond will suffice in this case. Under the terms of the preliminary injunction, Patriot is permitted to continue doing business with all of its current customers and thus does not risk losing substantial revenue or business based solely on one of its employees being unable to have contact with a limited group of potential clients. Accordingly, the Court finds a bond in the amount of $500 is appropriate.

### III. CONCLUSION

The Court concludes Kistler's Motion for Preliminary Injunction, Filing 4, should be granted in part and denied in part.

IT IS ORDERED:

1. James Glodowski is enjoined from calling on, soliciting the business of, selling to, servicing, or responding to any inquiries directed to him from those customers of Kistler with whom Glodowski had contact during his employment with Kistler and who are not presently doing business with Patriot and who have not done business with Patriot within the past two (2) years;

2. James Glodowski is enjoined from calling on, soliciting the business of, selling to, or servicing those customers of Kistler with whom Glodowski had contact during his employment with Kistler who have not used the services of Patriot during the past two (2) years, who have agreed to hire Patriot as of the date of this Order but who have not yet had Patriot perform any services for them;

3. James Glodowski is enjoined from calling on, soliciting the business of, or responding to any inquiries for new business directed to him from any customers of Kistler with whom Glodowski had contact during his employment with Kistler, but who were a Patriot customer within the past two (2) years. Although Mr. Glodowski may not call on, solicit the business of, or respond to any inquiries for new business directed to him from any customers within this category, he may be part of the team servicing this group of customers.

4. Plaintiff's Motion for Preliminary Injunction, [Filing 4](Filing 4), is denied with respect to any customers or categories of customers who do not fit within the described situations or categories as outlined in paragraphs 1 through 3 directly above;

5. Defendants and all persons acting in concert or active participation are immediately enjoined from directly or indirectly using, disclosing, or transmitting for any purpose any Confidential Information obtained by Glodowski during his employment with Kistler, including customer contact and preference information and pricing information;

6. Defendants are ordered not to allow the destruction, manipulation, or disposition of any evidence relevant to Kistler's claims, including confidential information Glodowski obtained from Kistler;

7. This preliminary injunction shall expire on the one-year anniversary date of Mr. Glodowski's resignation from employment from Kistler, which is April 10, 2020, without further order of the Court, unless it is terminated earlier or otherwise modified by court order.

8. Pursuant to Rule 65(c) and the provisions of this Order, the Court requires Plaintiff to post a bond with the Clerk of the Court in the amount of $500.00.

DATED this 14th day of November, 2019.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge